UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    KEVIN HALL, SR.,                                Case No. 15-30749-dof
          Debtor.                                        Chapter 13 Proceeding
_____/          Hon. Daniel S. Opperman

OPINION REGARDING TRUSTEE'S OBJECTION TO DEBTOR'S CHAPTER 13 PLAN

      The issue raised in this case is the role, if any, that Social Security income should have in the Debtor's Chapter 13 Plan. The Debtor's Chapter 13 Plan relies upon $853.00 from Social Security disability benefits to fund his Chapter 13 Plan. This amount is a portion of the Social Security disability benefits received by the Debtor. The Chapter 13 Trustee objects to the Debtor's Chapter 13 Plan because the Debtor has not committed all of his Social Security income to the Chapter 13 Plan. The Court heard oral argument regarding the Trustee's Objection on June 16, 2015, and took this matter under advisement.

Findings of Fact

      The Debtor filed his Petition, Statement of Financial Affairs, Schedules, and Chapter 13 Plan on March 25, 2015. On Schedule I, the Debtor reported that he is retired and disabled and has four sources of income:

| | |
|---|---|
| Pension/Retirement Income | $1,587.55 |
| Fidelity Pension | $1,336.78 |
| Prorated Tax Refunds | $ 100.00 |
| SSDI-Portion Debtor Voluntarily Contributes to Plan[1] | $ 630.00 |
| Total | $3,654.33 |

Schedule J reports expenses of $3,178.66, which left $475.67 available to pay the Chapter

---

[1] The Debtor reported Social Security disability income of $16,330.00 in 2013, $27,552.00 in 2014, and $4,475.20 in 2015 in his Statement of Financial Affairs. The Court estimates his monthly Social Security disability benefits may be $2,296, based on the 2014 income.

1

13 Trustee. The Debtor's Chapter 13 Plan committed $475.00 per month for 36 months. On April 30, 2015, the Chapter 13 Trustee objected to the Debtor's Chapter 13 Plan, stating that the Debtor should "Commit ALL SSI to Chapter 13 plan." Subsequently, the Debtor amended his Schedule I to adjust his income as follows:

|  |  |
|---|---|
| Pension/Retirement Income | $1,238.33 |
| Fidelity Pension | $1,336.78 |
| Prorated Tax Refunds | $   226.00 |
| SSDI-Portion Debtor Voluntarily Contributes to Plan | $   853.00 |
| Total | $3,654.11 |

The Debtor did not amend Schedule J.

On June 16, 2015, the Court heard arguments regarding confirmation of the Debtor's Chapter 13 Plan. The Chapter 13 Trustee argued that the Debtor's Chapter 13 Plan should not be confirmed because the Debtor had not accounted for or committed all of his Social Security disability income to fund the Chapter 13 Plan. In response, the Debtor cited 11 U.S.C. § 1325(b)(2) and 11 U.S.C. § 101(10A)(B) arguing that the Debtor's Social Security disability income cannot be included. In response, the Trustee argued that this income should be included and that more details should be given so that the Trustee could be assured that the Debtor was not using the retained Social Security disability income to purchase luxury goods or to maintain an excessive standard of living. The Trustee linked this argument to 11 U.S.C. § 1325(a)(3), which requires that the plan be proposed in good faith and not by any means forbidden by law.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (L) (confirmations of plans).

Most recently, the United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy judges to adjudicate certain claims. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

Applicable Statutes

11 U.S.C. § 1325(a)(3) states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if —
>
> . . .
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;

11 U.S.C. § 1325(b)(1)(B) and (2) state:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
> . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) for purposes of this subsection, the term "disposable income" means current monthly income received by the debtor. . .

3

11 U.S.C. § 101(10A)(B) states:

> (10A) The term "current monthly income" —
>
> . . .
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act . . .

Analysis

Congress carefully excluded Social Security benefits in the definition of current monthly income under 11 U.S.C. § 101(10A)(B). In turn, 11 U.S.C. § 1325(b)(2) defined disposable income as current monthly income received by the debtor. Moreover, the Sixth Circuit Court of Appeals in *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) held that the calculation of the debtor's projected disposable income must not include items such as benefits received under the Social Security Act. *Id.* at 330.

The Chapter 13 Trustee in this case, however, argues that 11 U.S.C. § 1325(a)(3), which requires that a plan be proposed in good faith, dictates that the Debtor must account for and, by implication, commit all Social Security benefits to his Chapter 13 Plan. Otherwise, as the Trustee argues, the Chapter 13 Plan is not proposed in good faith as there is the potential that the Debtor is living a lavish lifestyle or acquiring luxury goods at the expense of unsecured creditors.

This Court does not write on a blank slate in this district regarding this issue. Bankruptcy Judge Shapero authored an extensive and well reasoned opinion in *In re Mihal*, 2015 WL 2265790 (Bankr. E.D. Mich. May 6, 2015) addressing this very issue. Without reciting all of the cases cited in *Mihal*, Judge Shapero noted that every Court of Appeals that opined on the issue has ruled in

4

favor of the debtors. *See Drummond v. Welsh(In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013); *Mort Ranta v. Gorman*, 721 F.3d 241, 253 n.15 (4th Cir. 2013); *Beaulieu v. Ragos*, 700 F.3d 220 (5th Cir. 2012); *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314 (10th Cir. 2012).

Additionally, Judge Shapero noted that the Sixth Circuit in *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032 (6th Cir. 1988) has ruled that good faith is defined as a subjective analysis of the totality of the circumstances and supplied the Court with a twelve factor test.

After much analysis, Judge Shapero concluded that the specific nature of 11 U.S.C. § 1325(b)(2), which specifically excludes the inclusion of Social Security benefits in the definition of disposable income, controls over the more general provision of 11 U.S.C. § 1325(a)(3), which requires the plan be filed in good faith. In doing so, however, Judge Shapero harmonized the two sections by observing:

> . . . However, whatever might be seen as an unfair result in certain cases, the Court's discretion is limited by its view of the plain meaning of the statutes. Creditors and trustees are not wholly without recourse. For one, this ruling is only that confirmation cannot be denied on good faith grounds solely for failure to include Social Security income. Theoretically, if a debtor for example proposed using the retained Social Security income to purchase luxury goods or to maintain an excessive standard of living, an argument can be made that confirmation of such a plan should be denied on good faith grounds, not because Social Security income was excluded from disposable income, but because of those other circumstances of the case. In that sense, it is still possible for a debtor to pass the objective test of § 1325(b) but fail the subject test of § 1325(a), but that failure cannot be simply due to failure to include Social Security income as part of the debtor's disposable income.
>
> . . .
>
> This Opinion should not be interpreted as eviscerating the good faith requirement and its relevance in this or other situations. It only concerns the exclusion of Social Security income from a debtor's disposable income pursuant to § 1325(b), and does not touch on other "ability to pay" issues that are, or may be, involved in confirmation.

This Court agrees with the *Mihal* rationale and result. The Court has considered whether excluding Social Security benefits eviscerates 11 U.S.C. § 1325(a)(3) completely and concludes that is not the case. As stated in *Mihal*, there can be the situation where a debtor who receives Social Security benefits may be leading an extravagant lifestyle or acquiring luxury goods that are inappropriate. This is evidence of lack of good faith that requires denial of confirmation of a chapter 13 plan under Section 1325(a)(3). Conversely, there are cases where the debtor commits some or all of his Social Security benefits, even though those benefits are excluded by statute, because the debtor either needs to do so to have a feasible plan, meet the best interest of creditors test, or because those benefits are the only source of income for a debtor who needs Chapter 13 relief. In these cases, the court would confirm the plan because all Section 1325 elements are met. Stated differently, the Court concludes that the failure to include Social Security benefits is not per se bad faith, but that the issue of good faith can be raised by a closer and more nuanced examination of the debtor's expenses and assets.

In this case, it strikes the Court that an examination of Schedule J leads to the conclusion that the Debtor is not leading an extravagant lifestyle or acquiring luxury items. However, the Debtor in his Statement of Financial Affairs has reported that he received $16,330.00 for disability in 2013, $27,552.00 in 2014, and $4,475.20 in 2015, as of the Debtor's March 25, 2015, filing. It appears that the Debtor receives about $2,296.00 per month, but has committed $853.00 per month. It is a fair inquiry as to what the Debtor does with the difference of $1,443.00. That said, the excess amount does not strike the Court as an amount to acquire luxury goods or to lead an extravagant lifestyle, but the Court leaves this issue open because the Court, at this time, lacks sufficient evidence to make that conclusion.

Accordingly, the Court holds that the failure to include all of the Debtor's Social Security income is not a per se finding of bad faith thus precluding confirmation under 11 U.S.C. § 1325(a)(3).  The Court will, however, allow the Trustee, if he deems it necessary, to further investigate the expenses reported in Schedule J, confirm the Debtor's Social Security disability benefits, and then raise the issue in a more detailed analysis of whether the Debtor leads a lavish lifestyle or acquires luxury goods that evidence bad faith to preclude confirmation of the Debtor's Chapter 13 Plan under 11 U.S.C. § 1325(a)(3). Until the Trustee can prove improper use of the Social Security benefits, which in turn show a lack of good faith, the Debtor need not include additional Social Security benefits.

**Signed on July 01, 2015**

                                                             **/s/ Daniel S. Opperman**
                                                             **Daniel S. Opperman**
                                                             **United States Bankruptcy Judge**